Good morning. It may please the court. I'm Sean Griffin. I represent the appellant, Mr. Ryan Bussey. I'd like to reserve four minutes for rebuttal. Mr. Bussey challenges the Army Board's denial of upgrade and discharge status as arbitrary and capricious primarily on three grounds. First, that the board formed an improper medical opinion that was adopted neither by the opinion of the agency's doctor or Mr. Bussey's own private medical doctor. It's Mr. Bussey's doctors as shown in the record in their medical opinion. There is a demonstrated link between PTSD and high-risk sexual behavior and not only between that but also between PTSD and criminal sexual conduct. Let me ask you this. The DSM-5 has been supplemented by 5-TR and hypersexual behavior hasn't been added. Does that in any fashion support the Army Board's psychologist and advisory opinion? The DSM-5 is not binding on the entire totality of PTSD. It does inform, however, PTSD. The DSM-5 does, however, include traits that are consistent with high-risk sexual behavior. It includes other facts which are known to be in the soliloquy of PTSD, including malconduct, including increased arousal, including reckless behavior. While it does not specifically cite to this specific type of conduct, it certainly cites to a number of factors which are informative of that conduct. I sit on a lot of veterans appeals at the Federal Circuit and we see expansions all the time. The VA finds Agent Orange covers something new, that kind of thing, and yet it's not necessarily reflected in the DSM or which is not as transitory. Balance that. Here, the DSM-5 seeks to provide information that helps diagnose these conditions, but this is not by any means the only means of diagnosing these conditions. Mr. Bussey's doctor has provided a number of new studies, and as you alluded to, there's development in these types of diagnoses of medical, especially mental health disorders. These new studies and new science determine that there is a link between high-risk sexual behavior and PTSD. Let me ask you to focus for a moment on what the board said. It may have been focusing too narrowly on the actual crime for which Mr. Bussey was convicted, but it said, well, we've looked at Dr. Burdine's report and we've looked at the articles, and while they do indicate that high-risk sexual behavior is a sequel of PTSD, none of them define high-risk sexual behavior in a way that would cover the crime of unwanted touching. And the Army psychologists, who only review the record, say we've looked at the DSM and it's not there either, and we're unaware of anything that defines this very particular type of conduct, unwanted sexual touching, as a sequel of PTSD. We review those findings very differentially. I probably think they're incorrect and there may be another way to look at it, but just focusing on it that way, why isn't it a rational decision by the agency? Perhaps the Seventh Circuit said it best in Schmidt, law judges and especially administrative law judges are to resist the desire to play doctor, and here this is what the board did in this case. It's the medical opinion of Mr. Bussey's doctor and the agency's doctor that neither forecloses the fact that criminal sexual behavior could be included in PTSD. They had a competing opinion. Why were they required to be persuaded by Mr. Bussey's physician? They weren't required to be persuaded by Mr. Bussey's physician. Where's the error of law? The error of law is where the board acted in a manner that was arbitrary and capricious and considered factors that Congress did not intend it to. Counsel, break this down. I mean, your first point really is this one, and of course they have a lot of discretion as Judge Hurwitz has just indicated. They had competing medical opinions and you think they were wrong, right, to believe or to be persuaded by one rather than the other. So how is their opinion arbitrary and capricious? Did they not give sufficient, you know, explanation? What is it exactly? It's that the board reaches a medical opinion that is supported by neither doctor. The board forecloses the fact that criminal sexual behavior could be in the soliloquy of PTSD. Neither doctor reaches the conclusion. That's helpful to me. Forgive me for interrupting. I'm just trying to be careful with your time. So that's helpful to me. So now go, please, to the government's expert. He thought that this was a sequela that should not be expected, right, that this particular crime involved elements that should not be expected from PTSD. Why was he wrong about that? Well, he was wrong about this scenario because it is demonstrated within these new developing studies and within the traits that are developing in the study of PTSD. Is it a problem then they were persuaded by an expert opinion that didn't take into account the new reports? Is that it? Yes, it doesn't take into this report and it reaches a conclusion that's not supported by the facts and that was presented to the doctor. It tends to reach a conclusion that high-risk sexual behavior is only included in the in the traits of PTSD when it's consensual sexual behavior and that's not something that the doctor was able to cite from any medical treatise or any medical record in that support. Okay, got it. Are you making a Doe-Bear analysis? Not in this case, no. In this case, we are simply asking that, we're simply seeking that the board be limited to adopting one of the medical opinions rather than forming its own medical opinion. Unfortunately, it appears that's what the board did here. I'm sorry, I didn't mean to step on you. I want to get to other issues, but this is why I'm having some difficulty. They did have an opinion from the psychologists who said this crime is not, in our view, a recognized sequel of PTSD and they then looked at Dr. Deane's report and said, well, she says high-risk sexual behaviors are, but we don't think this is a high-risk sexual behavior. So they did adopt one of the opinions. They may have adopted it incorrectly, but it wasn't as if they had no evidence in front of them and then just said, well, we'll make up our own medical diagnosis. But I want you to focus for a moment on the statute. What does the statute require the board to consider? It requires the board to consider four factors which are enumerated under the curtain. Well, you're not talking about the interpretation of the statute by the Army. What's the actual statutory language? What do they have to consider? The board is to weigh Mr. Bossie's PTSD. Now, look at the actual language of the statute for me. The statute talks that they should weigh the circumstances? Yes. That led to the discharge? Yes, that is correct. The statute doesn't say they should weigh the elements of the crime. They should weigh the circumstances that led to the discharge. Is this a case in which the circumstances that led to the discharge were high-risk sexual behavior, even if the precise crime was not? Yes, that is what's supported by the information presented and the medical diagnosis. I want to focus on those circumstances for a moment so that I understand what was in the record and what was not. This was a one-time encounter, correct? That's correct. Lasted how long? Can we tell from the record? It is disputed, but it's approximately eight hours. Mr. Bossie knew that this woman had had relations with other members of his platoon beforehand? That's correct. Does the record tell us how many? I do not believe so. Does the record tell us whether he was intoxicated or otherwise impaired? The record does not show that. We knew that he had a problem, but we just don't know on that day whether he was. Yes, well, Mr. Bossie was, as is demonstrated, experiencing severe PTSD as a result of his service. And I also thought the commanding officer's reports indicated that he had some substance abuse. Yes, that is also true. Okay. And we also know that the woman was married. I'm not clear that I can tell from the record whether Mr. Bossie knew that at the time. I'm not aware of that fact either. Okay, I think he says I found out the next day or something like that. But put all those facts together, would engaging in... It's difficult in this record because we have a finding of... I think what we have is a compromise jury verdict. We have a finding of no rape but unwanted sexual touching, and it all occurs in the eight hours. So it's hard for me to figure out how that happened. But just assuming for a moment that there was unconsented sexual touching during that period, were the circumstances that led to that a high-risk sexual behavior? Yes, that's what's demonstrated. The PTSD includes factors which are traits which were demonstrated in Mr. Bossie's conduct that day. Furthermore... What's important to me is I don't think the statute says we should determine whether the elements of the offense are a high- risk sexual behavior. It says we should determine whether the circumstances that led to the discharge were potentially... So we have two weasel words there. Potentially contributed to by the PTSD. And so I'm trying to look at the for your friend, too, because that's what troubles me about this case. They seem to be doing what we do call a categorical analysis here. We're looking at the elements of the offense and trying to figure out how they occurred, and we're trying to figure out how the circumstances occurred. Yes, and that's exactly right, and that delves into our next point. The agent at the board in this case implied an improper standard of law and concluded factors that Congress did not intend it to when concluding that if they were to grant Mr. Bossie's petition, they would be providing a PTSD-based exoneration to all sexual misconduct. Counsel, I'd like to break in here, if I could, to ask you something different so you have an opportunity to respond. We've got three memos here. The Hagel memo, the Curta memo, and the Wilkie memo. Yes. The board's opinion doesn't mention any of them. It recognizes that there are these memos, and I can certainly tell from the language they use that they considered the Hagel memo and the Curta memo. I can't tell that they considered the Wilkie memo. Can you? No, but... Okay, the Wilkie memo says that the board shall consider, and the first thing it mentions is, the custom and practice of the military to honor the sacrifices and achievements of the member, and I think your client's sacrifices and achievements are uncontested. Is that correct? His service was described as exemplary prior to his deployment. That is correct. All right, then it says that desire to punish only to the extent necessary. Your client was found guilty and sentenced to six months, and he served that time, correct? That is correct. All right, then it prioritizes, in the first sentence, the need to rehabilitate to the greatest extent possible. Yes. And to favor second chances. Yes, that is correct. What I can't tell is, in this 50-page opinion, where the board makes any allowance at all for the need to rehabilitate. If you go to sub 7, which is an itemized list, a long one to be sure, but I don't see any acknowledgment of the following factors, and this is for opposing counsel's benefit as well, so he has an opportunity to respond. The length of time since the misconduct, I think 14 years? Correct. Is that right? The degree to which the requested relief is necessary for this particular applicant. He's wheelchair-bound. That is correct. The record shows that he's living in his car? At one point, yes. And that he was, at the time, bathing in the river when he could bathe? At one time, that was correct, yes. That's the time we care about, counsel. Yeah. That's the time we're looking at. So if there's some hidden meaning in your response to me, let me know what it is, but this is the relevant time, the time of their decision. That is correct. All right, then I'll go on. The critical illness or old age, your client is not an old man, but he is wheelchair-bound? That is correct. Right, and I don't think there's any question that the board acknowledged he's been, he suffers from serious PTSD. I don't see any acknowledgement or discussion of other available remedies, and that's the thing that bothers me the most. It seems to me to be the case that if the board was aware that your client had other avenues available to him to further this acknowledgement of the need to rehabilitate to the greatest extent possible, then the board kept that to itself. I don't see any consideration of that factor. I want to raise this to both of you so you can explain it to me, because it may be that the board knew something we don't know about what other options are available to your client. No, and Mr. Busse at that point had no other options at that point, and that is the basis of his petition for discharge status upgrade. As you may be aware, due to a bad conduct discharge, Mr. Busse is foreclosed from receiving VA medical treatment, and that as a result, the board has essentially conceded that he has obtained a PTSD as a result of his service. The PTSD, as we allege, was a factor that needs to be considered alongside his conduct. Because of that conduct, he's unable to then receive that benefits would allow him treatment for that PTSD. Okay, so here's the other thought that I want to articulate out loud so you can both have a chance to respond, and we'll give you some more time when you come back, and I certainly want the government to be able to respond. It is no secret to us that the has been, the military has been thumped repeatedly for its, what I'm going to say, I hope you forgive me for a persistent refusal, some people have perceived, or failure to account for the very serious incidents of sexual assault within the military. I understand that. I think we all understand that. And then Congress has come back, and as Judge Hurwitz has mentioned, and as these three memos make very, very clear, with a competing imperative, and that is to take care of our veterans. So that puts the board in a pretty tough spot, and it puts the board in a particularly tough spot that we haven't really got any case law to speak of in this area. Very, very little, right? So we haven't spoken to this, and I can, if I put myself in the board's shoes, that makes it pretty tough. We're going to review this very, very differentially as we are required to do. But I am concerned that the board hasn't engaged, and in the final analysis, even though this is 50 pages, their analysis is, this is a serious offense, and the PTSD doesn't sufficiently mitigate. I mean, it really kind of boils down to one sentence, right? So what else would we expect to see the board do in this circumstance? We would expect the board to review this circumstance as it applies to Mr. Busse specifically. Rather than making casting dispersions that this would provide a PTSD-based exoneration to all sexual misconduct, we'd ask that the board review Mr. Busse's occurrence of PTSD and his circumstances as well in order to balance these factors and reach a decision. And it appears that the board foreclosed itself from doing so in concern about providing an exoneration to other individuals or setting a precedent, which is not a factor that Congress has intended it to consider. I know we're over time, but I wanted the other side to have the opportunity to respond to this question. Let's assume we believe you're correct. What is the relief that you think we should order? This should be remanded back to the board where Mr. Busse should have a new hearing. Mr. Busse should again be able to present evidence as the agency would be able to, and the proper weighing of this evidence would occur. And that would be considered only based on Mr. Busse's occurrence of PTSD and his conduct rather than external motivations and external factors. Thank you. Anything further? Well, I'm going to ask your friend, but it seems to me that one of the major sequelae of PTSD is high-risk behavior across the board. Am I not correct? That is correct, including reckless behavior and other types of increased arousal. Motorcycle too fast, for example. Yes. Anything further? Not at this time. When you come back, we'll put two minutes on the clock so you have an opportunity to respond, but we need to hear from the government. Thank you, Your Honor. Good morning. May it please the Court. My name is James Schaefer. I'm an assistant United States Attorney in the District of Idaho, and I'm appearing on behalf of the Secretary of the Army. Pick up on my question, my last question slash comment to your friend. Yes, I think the Board recognized that high-risk sexual behavior is a potential sequelae of PTSD, but then the Board draws a distinction between high-risk sexual behavior, as discussed in the articles cited by Dr. Burdine, which all relate to consensual high-risk sexual behavior, and draws a distinction between that and criminal conduct. So if this had been a rape, if he had been convicted of a rape, would the evidence submitted not suggest that the circumstances that his PTSD liberally construed led to the circumstances of the offense? Not on the record before this Board, Your Honor. Well, why not? I mean, the doctor, everybody says high-risk sexual behaviors are a consequence of PTSD. Hard to think of a higher-risk sexual behavior than rape. And so if this were a rape case and they said, gee, there's no evidence that PTSD leads to that kind of behavior, I'd have no problem at all saying, oh, come on. It leads to loss of impulse. Everybody agrees it leads to loss of impulse control. It leads to heightened sexual desire. There's a whole variety of things that would suggest it was relevant to that. And so I'm having trouble figuring out why, because he was convicted of the lesser offense here. Under the same circumstances for which he was charged with the rape, all of this isn't relevant to determining. See, my difficulty is the Board says we're not going to – it wasn't a but-for cause, so we're done. But that's not what the statute says. The statute says liberally construed potentially contributed to. And it doesn't seem to me they honored the statutory. So there's two parts to your question, Your Honor. Taking your hypothetical, had he been convicted of rape, was there evidence before this Board that high-risk sexual behavior can contribute to rape? I disagree. I've read the articles and I've read the opinion. And what Dr. Bourdain says, it seems to me quite undisputed, is because this condition leads to loss of impulse control and heightened sexual desires and things like that, it contributes to high-risk sexual behaviors. Now, nobody thinks there's a single definition of high-risk sexual behavior, but it's hard for me to think of one more paradigmatic than rape. So the articles Dr. Bourdain relied on give examples of high-risk sexual behavior, multiple sexual partners, unprotected sex, casual sex. Those articles don't take the next step. Sorry, Your Honor. I interrupted you. Go right ahead. Forgive me. Those articles don't actually support the conclusion that PTS leads to high-risk sexual behavior, including rape. On top of which, the standard review in this case is very deferential. This Board wasn't presented with just Dr. Bourdain's opinion. It had an opinion in the second go-around from an Army Board of Review psychologist that takes the opposite position. It says PTS— His position is simply, because I've read his report, this is not a recognized sequel of PTSD, correct? He doesn't diagnose Mr. Busse. He looks at his medical records and says, yeah, even if he has PTSD, I've searched the literature and the DSM, and I can't find anything that says this is a recognized sequel. Yes. That's all he says. Yes. And it was not irrational for this Board to be more persuaded by that Dr. Spindy. The Board is also, in its opinion, recognizing that there's a difference here, an important distinction. And this goes back, I think, to the point I was making earlier. The military has been strongly criticized for not recognizing that rape is a crime of violence, for not recognizing the nature of the offense, of that offense. So I, as I said, have some sympathy for the Board for being caught betwixt and between here. These are two very important competing narratives. But Congress has been clear, as Judge Hurwitz indicated, and the standard that applies here is capacious. And I don't know that that is reflected at all in the Board's opinion. This most recent memo, the Wilkie memo, I don't see reflected in the Board's decision. Do you? It is, Your Honor. Where? In the record proceedings. The Curta memo is. The Curta memo is, but then the record proceedings, the last several pages of it, is the attachments. And if you go to Excerpt of Record 114, paragraph 8, contains a summary of the Wilkie memo, including the. I'm looking at the decisional document. Is ER 114 something else? It is in the decisional document, Your Honor. The. Well. So the body of the record of proceedings, it ends at ER 100 with the. Right. With the vote, and then the next page is part of the AMBCR's record of proceedings, and it's continued. And it lists all of the references. Yes, counsel, but I'm looking at ER, you know, about 99, 98, which explains their, the basis for their ultimate conclusion. And it comes down to about two sentences that says on 99 that, you know, this is a serious offense. No question it was a serious offense. And a jury found him guilty, and he has been punished, and he served that time. I am not pushing back on that, right? This case to me is, I'm just one of three, but it boils down to the board's ultimate decision of weighing. Could this have been mitigating? I think the board actually concedes that it could have been, and then they decide it's not. And they decide that's a really serious offense. It does beg the question that opposing counsel asked in his brief to the board, which is if this record doesn't qualify as mitigating, it seems like nothing ever would if the offense is sexual in nature. So I agree, Your Honor. The board does say whatever the mitigating effect of PTSD, this crime is so serious, we're not going to grant clemency. The only path to relief for Mr. Busse in this case as a result of 10 U.S.C. 1552-F is clemency. And the Willkie memo is the only guidance that tells the board what factors you look at. But that memo is very clear. Clemency is not required. Yes, sir. But where does the, yes, but it does say the board shall consider, right? It uses that verb. And I don't see that they did. Where does it say anything about considering the enumerated factors that include the degree to which this particular individual, right, the degree to which the request of relief is necessary for the applicant? He's in a wheelchair. He's in dire straits. And it also requires that they look at the availability of other remedies, counsel. And I don't think they discussed that at all. Well, I would go back to the application, Your Honor. Mr. Busse didn't assert in his application that some of the things that you've raised, for example, the fact that he's now as a result of a motorcycle accident in a wheelchair. Well, sure. The board's aware of that. But clemency involves, in this case, action on a sentence of a court-martial. A court-martial consisting of both officer and enlisted members found that a dishonorable discharge. In fact, a sentence of that. Yes, I appreciate that. He was granted clemency by the convening authority. And that's how we result in a bad conduct discharge. Right. Right? And the board here says we've looked at that. And it identifies his circumstances as 40-some pages of what leads up to this point where the board makes the decision and says simply that the mitigation here, whatever it is, isn't sufficient given the severity of the crime. Yes. And I understand, Your Honor, his concern that the military has been, in your words, been thumped about a less than- Well, I think it has. And I appreciate the concern for this. I genuinely do. But there's another- Congress had another concern in mind about taking care of veterans. Yes. Right? There are competing concerns. And number one, number one, where it says that the board shall consider, right, the first thing they say is the military custom and practice to honor sacrifices and achievements to punish only to the extent necessary to rehabilitate to the greatest extent possible and to favor second chances. I don't see any dispute about the sacrifices and achievements or that punishment was necessary, appropriate, and that he served his time. I'm trying to figure out whether they look where. They account for, you know, when they make this decision about this, this isn't sufficiently mitigating, where do they account for the need to rehabilitate to the greatest extent possible and to favor second chances? I don't think they mention it. Now, the board clearly mentions his service, his combat service.  His services going to ranger school. The record makes clear that the board was aware of his military service and aware of the misconduct that resulted in the discharge. And the board makes a rational conclusion based on the evidence before it that there's not been an injustice. Can I- I'm sorry, that there's not- That there's not been an injustice here. That it is not unjust for a service member convicted of wrongful sexual contact, in this case, touching a woman's that that service member having a BCD is not an injustice. Okay. So I just want to be sure that you don't see it either, any indication or consideration by the board in its decision of the need for this individual to receive these services or the availability of any other remedies to him. I don't see it. But if you do this, it is a sincere question. I'm not trying to set you up. I want to make sure I haven't missed it. In terms of other remedies, the board does comment early on that Mr. Busse is seeking an upgrade so that he can serve, for example, VA medical care. And the board says that's not within his purview. It cannot grant relief for- So that's something he's not going to receive. Yes. So in terms of other avenues, what is the other avenue of rehabilitation? I don't identify one in the application. Yes, but this has nothing to do with his application. As far as I'm concerned, but please correct me if I'm wrong, this Wilkie memo is binding whether he said anything in his application.  The board is required to consider these points. I would agree that under the Fisher decision, I believe the Federal Circuit, when the Army promulgates guidance, they're required to follow it. Thank you for your patience with my questions. I cut off Judge Hurwitz. Well, I was going to ask you about, and I'm not sure I know the effect of any of these memoranda after Loeb or Bright, but let's put that aside for a second. The fourth criterion in the CURTA memorandum is does that condition or experience outweigh the discharge? And in this case, the board says it does not. But do you agree that if we think the board didn't properly evaluate the PTSD, we have to send it back for them to do a proper evaluation of it and then do the weighing? See, I don't think they said- I do not, Your Honor. Even if we believe everything. Even if we believe this condition, this crime was caused by the PTSD, it doesn't matter to us. I don't think I read them as saying that. Do you read them as saying that? I do, Your Honor. What the board says is whatever the mitigating effect. The board acknowledges that there is disputed expert evidence on whether- Well, but it doesn't say, even if we believe Dr. Verdeen, we don't care. I mean, that's my difficulty. I don't- that's a function for the board, not for me. But I'm trying to figure out whether I should treat their final statement as saying- which would be kind of strange because they've devoted 50-something pages to debunking Dr. Verdeen's opinion. Just finish your answer to this question because I want to make sure I get your point here. Yeah. So is it that this is an independent ground for affirming the board or is that- is it that we really- the board, in doing that, took into account its evaluation of the PTSD evidence? And now we're going to let you answer that question. Yes. I believe that even if this Court finds there was some irregularity in the treatment of the expert testimony or the expert opinions, this board can affirm because the board's clear on the basis of its decision. Whatever the mitigation, the severity of- Go ahead. Whatever the mitigation- Whatever the mitigation, the severity of this offense outweighs it. So there'd be no way for a person convicted of this offense, Yvette, to ever receive relief? No. All the board is considering is the evidence before it and whether Mr. Bussey met his evidentiary burden of establishing an injustice by a preponderance of the evidence. Right, right. And that's- Wait, wait, wait. So finish that- finish this point, if I could. Please, please. Forgive me. And your point is that I think you're saying, yes, you read the report to say this conviction or the conduct was so severe that even taking in all of the factors, which you're wanting to read and that they- I didn't mean that pejoratively- that they considered the three memos and that it would- it could not have been mitigated by anything in this record? Could not have been? It's your could not have been language, Your Honor, that I don't agree with. Oh. This board was only charged with evaluating the evidence before it. Right. And on the record before it, it found the severity of this crime weighed whatever mitigation came from PTSD. Okay. But is it whatever mitigation they accepted or whatever mitigation he presents? So I want to go back to Judge Christen's question. Let's assume that the board had found, yes, Dr. Berdeen is right. Your conduct in this case arose from your PTSD. And let's assume that they even found it was caused by your PTSD. And you're saying even if they found all that, they were entitled to say, we don't care because the crime is serious enough. I wouldn't phrase it as we don't care, but the board was within its discretion. I know, we don't- we take that that we don't care. The board was within its discretion to say, yes, we agree with Dr. Berdeen. Yes, you have PTSD. Yes, PTSD results in high-risk sexual behavior, including rape, but we're still not granting relief because the severity of this crime warranted a bad conduct discharge. And that's how you read their opinion? That's how you read their opinion? Yes, Your Honor. Okay. Now- Okay. Go ahead. We'll give you more than eight seconds, I promise. Go right ahead. I want to go back to my first question, which I don't think you answered. So I'm going to rephrase it. And I want to put the United States on record here. Does the board in this case recognize that that is a potential? I can't speak for the United States at large on that question. What I can speak to is this record. And the board is very clear. It says, it says we do not dispute that PTSD might lead to high-risk sexual behavior. So the board took into account Dr. Berdeen's opinion. Was what Mr. Ducey was charged with and what he was convicted of high-risk behavior? I'm not using the word sexual. Was it high-risk behavior? Well, I think all crimes are high-risk in the sense that you can be convicted and sentenced. But I don't see on this record that the conduct that resulted in his conviction falls within the scope of the articles relied on by Dr. Berdeen. Because it was not consensual? Because those articles speak to consensual sexual. Because it was not consensual. Yes, Your Honor. So let me go back to that for a second. This is why this case is so confusing to me. Apparently, the jury in the court-martial found that he was engaged in both consensual and non-consensual sexual behavior. I don't think so. My understanding of the record, I'm not sure it matters. I'm with you on the first point, which I'm not sure it matters. But my understanding is that both parties submitted evidence of three instances of sexual intercourse and that the only question was consent. Is that right? Which is why I don't think the verdict makes a lot of sense to me. But that was my understanding of this record. So the trial judge and the board both identified one of the distinctions between the first three specifications of rape, which require penetration, but they also require either physical threat or violence or the fear of... Right. I don't want to paraphrase too loosely, but the first three specifications, and this is in 2 S.E.R. 36, the first three either require physical violence, strength, power, restraint... Yep. ...or a fear of physical injury. The charge that he was convicted of didn't require those. So it's not just a distinction between penetration. You can be convicted of the latter one.  For example, if a woman was intoxicated to the point that she could not consent, a jury here could rationally conclude that we can't meet the element of physical violence. Physical violence, we don't have beyond a reasonable doubt fear, but we can find him guilty beyond a reasonable doubt of all of the elements of the fourth specification of Article 120. And it's no different than any civilian jury. They can accept and reject evidence... Or they can reach inconsistent verdicts. I mean, you're not required to explain an inconsistent verdict. Yes. Inconsistent verdicts get to stand. Exactly. And here there's no inconsistency between the now overturned adultery conviction, which would require sexual intercourse, and a not finding guilt in the first three specifications. I'm going to disrespectfully agree to disagree with you on part of this. For me, there's still some problems with the verdict. I don't know that it matters at all here. You know, my premise is he was convicted, right? He was sentenced and he's done his jail time. And that's my starting point, just to be clear. Yes. But part of his sentence was the bad conduct discharge. I understand. And I understand Your Honor's point that he has served the time he was sentenced to. Yeah. Part of his sentence... Part of his sentence, well, there's stigma, right? He's going to have to be registered as a sex offender, right? That's my understanding, yes, Your Honor. Yes. But I guess the question I was asking, and I'm not sure you can answer it, to be fair to you, is that it does seem to me that some aspects of the circumstances that led to his discharge involved a consensual sexual encounter. They were – I mean, it may have gone too far, but the encounter began as consensual, did it not? I have no evidence about how they – well, that's not going to change. Is the way the record appears? There is evidence in the record that they were out dancing and they went back to the barracks together. How the actual physical contact started, I don't have anything in the record on that. Is there anything further? Judge Ritz? No. I don't think we have anything further. And I want to thank you for your patience with our questions. You'll have two minutes. Thank you, Your Honor. Thank you, sir. I want to touch on one point that the respondent raises on their previous argument. The respondent stated that whatever the mitigation of Mr. Busse's conduct, that it does not outweigh the conduct that actually occurred. Quoting the board. He was attributing that to the board, yeah. Yes. Adopting that opinion of the board. But that is inconsistent with the directive of the CURTA Memorandum. On page one of the CURTA – And the Wilkie Memorandum. That is correct. But specifically on page one of the CURTA Memorandum, it directs that the board is to give liberal consideration to veterans petitioning for discharge relief when the application for relief is based in whole or in part on matters relating to mental health conditions, including – and then proceeds to give a list of potential actions, which includes sexual assault or sexual harassment. It appears that the board here is acting in contrary to the CURTA Memorandum when it's saying that Mr. Busse's conduct is – whatever the mitigating factor cannot outweigh his conduct. Well, finish this. I didn't want to cut you off. But let's assume the board had done what I posited to your friend. It had said we accept Dr. Berdine's opinion. We think this was a contributing factor. But we think – PTSD? Meaning PTSD was a contributing factor? The PTSD was a contributing factor.  It mitigates. We think it's a mitigating factor. But we don't think that mitigating factor is sufficient to outweigh the circumstances of the discharge in this offense – in this situation. Could we overturn that decision? I'm not sure that's a decision they made, but assume they'd done that. They'd gone through everything else perfectly well, done everything you wanted, but said at the end, you know, we have to engage in weighing. And when we engage in the weighing here, we think this particular offense – Mr. Busse's, not the elements of the offense – are so – the mitigation doesn't outweigh it. Could they reach that conclusion? The board certainly could. And we're not foreclosing that that could be a possibility if this were to be remanded. But that's not our objection here. But your friend says that's the conclusion they did reach. And so would you respond to that? Our opinion is that – our position is that that's not the position that's reached by the board. The board, instead of weighing the evidence, adopts an improper opinion that is neither supported by either medical doctor. Instead, bases it on this conclusion as evidenced by their statement, they are concerned about whether or not this would grant a PTSD-based exoneration for all sexual misconduct. And here it appears that the board is not weighing whether or not Mr. Busse's individual conduct mitigates his individual PTSD, but instead considering factors that are outside of the scope of what it was directed to consider. That in itself is arbitrary and capricious. If the board were to properly weigh these factors, it could reach the position as dictated by the counsel for the secretary. But that's not what occurred here. And Mr. Busse was in turn deprived of having that opportunity to be heard in that matter. I'm going to take a – thank you for your argument. I'm going to take a point of privilege and ask you both to address one more point. I'm really struggling with – and again, I'm just one of three. But I am struggling with these two very, very critically important imperatives and the dearth of guidance available, certainly from the court, for the board. And so I'm wondering whether or not we can be helpful or should by publishing an opinion on this matter. And I'm not sure what my own view on that is. But if you have thoughts you want to share on that, I'd welcome them. Or maybe we'll hear from – would you like to hear from the government? Just briefly, please. In terms of publication of this matter, if that is the discretion of the court to publish it, Mr. Busse would see, in fact, that there would be a benefit to that, as it would – Here's the deal. Maybe I should have asked more – I know it's within our discretion. The reason I'm asking is because these cases are such a mix. They're such a soup. And they're so individualized. I don't know that we can be helpful. Do you think there's guidance we could add as a matter of law that would be helpful? There is matter of guidance that perhaps could be added as a matter of law. But I agree with your position, and my argument was going to be the same, that these are specific cases that require in-depth weighing of these individual factors. These are hard decisions. It requires weighing of information that is messy and difficult to consider. Thank you. Counsel, I'd like to hear from you. And it's – come on up. It's clear to me that you've taken this case very, very seriously, which I really appreciate. This is a hard one. What do you think about whether we can be helpful with a published opinion on the law? On the meaning of liberal consideration under 10 U.S.C. 1552. Right. The statute does not find what liberal consideration means. The courts have then had to look at the Hagel Memo or the Curta Memo. And the Wilkie Memo. I think the Federal Circuit recently issued a decision in Doyon v. U.S. 58-4-12335 that does take on what does liberal consideration mean and determines it's a less or more lenient evidentiary standard to establish the fact of PTSD. And there's some language that says also whether there's a nexus between that PTSD. But that liberal – that more lenient evidentiary standard doesn't actually change the standard of the board or the standard of the Secretary of the Act Center, which is has there been an error or injustice. I don't believe there's a Ninth Circuit published opinion on that issue. Okay. I want to thank you for this. I'm sure you weren't expecting this last round of this final question. So thank you for accommodating that and for your very careful briefing, both of you, and excellent advocacy. It's an important case. And we'll get an answer for you as soon as we can. Thank you, Your Honor. We'll stand in recess. Thank you. Thank you.
judges: Wallach, CHRISTEN, HURWITZ